**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS**

| | |
|---|---|
| HEATHER MCCLAINE, on behalf of herself and all other persons similarly situated, known and unknown,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>DX ENTERPRISES, INC. f/k/a DX ENTERPRISES, LLC d/b/a DXE, d/b/a FCQA, LLC,<br><br>　　　　　　Defendant. | Case No. 3:23-cv-01168-DWD<br><br>Judge David W. Dugan |

**STIPULATED JOINT ESI PROTOCOL**

**DUGAN, District Judge:**

The parties, Plaintiff Heather McClaine and Defendant DX Enterprises, Inc. f/k/a DX Enterprises, LLC d/b/a DXE, d/b/a FCQA, LLC, seek the entry of a stipulated order to cover the production of electronically stored information. The Court has reviewed the parties' proposed agreed order, and **FINDS** good cause for the entry of the ESI Protocol. Accordingly, pursuant to Federal Rule of Civil Procedure 26, the Court hereby enters the following protocol as agreed upon by the parties to govern the search and production of electronically stored information ("ESI") in this matter (the "Stipulated ESI Protocol" or the "Protocol").

　　1.　　**Purpose**

This Order will govern discovery of electronically stored information ("ESI")

1

in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules.

    **2.**    **Cooperation**

    A.    The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI to promote the "just, speedy, and inexpensive determination" of this action, as required by Fed. R. Civ. P. 1.

    B.    The parties are expected to use reasonable, good faith and proportional efforts to preserve, identify and produce relevant and discoverable information consistent with Fed. R. Civ. P. 26(b)(1). This includes identifying appropriate limits to discovery, including limits on custodians, identification of relevant and discoverable subject matter, time periods for discovery and other parameters to limit and guide preservation and discovery issues. The failure of counsel or the parties to cooperate in facilitating and reasonably limiting discovery requests and responses will be considered in cost-shifting determinations.

    **3.**    **Proportionality**

    A.    The parties will consider the proportionality standard set forth in Fed. R. Civ. P. 26(b)(2)(C) in formulating their discovery plan. To further the application of the proportionality standard in discovery, requests for production of ESI and related responses should be reasonably targeted, clear, and as specific as practicable. The parties also will consider the option of prioritizing certain discovery where appropriate.

**4.     Preservation of ESI**

A.     The parties acknowledge that they have an obligation to take reasonable and proportional steps to preserve discoverable information in the Party's possession, custody or control.

B.     The parties agree that the circumstances of this case do not warrant the preservation, collection, review, or production of ESI that is not reasonably accessible because they anticipate that enough relevant information can be yielded from reasonably accessible sources and, as necessary and appropriate, supplemented with deposition discovery. Moreover, the remote possibility of additional relevant information existing in not reasonably accessible sources is substantially outweighed by the burden and cost of preservation, collection, review and production of ESI from sources that are not reasonably accessible. The parties agree that the following ESI is not reasonably accessible:

   i.     Data maintained or duplicated in any electronic backup system for the purpose of system recovery or information restoration, including but not limited to, system recovery backup tapes or other media, continuity of operations systems, and data or system mirrors or shadows, if such data are routinely purged, overwritten or otherwise made not reasonably accessible in accordance with an established routine system maintenance policy.

   ii.     Unallocated, slack space, deleted data, file fragments, or other data accessible by use of computer forensics;

3

    iii.    Random access memory (RAM), temporary files, or other ephemeral data that is difficult to preserve;

    iv.    Data relating to online access, such as temporary Internet files, browser history, file or memory caches and cookies;

    v.    Data in metadata fields that are frequently updated automatically as part of the usual operation of a software application, operating system or network (e.g., data last opened) provided, however, that such metadata as it exists at the time of preservation shall be retained, produced, and not altered by the production process unless it is separately preserved and produced with the relevant document;

    vi.    Telephone or VOIP voice messages that are not regularly stored or saved, unless any such messages were otherwise stored or saved;

    vii.    Instant messages such as messages sent on Lync Online, Microsoft Communicator, or any other instant message platform if not maintained in the ordinary course of business.

    viii.    Data stored on cell phones or mobile devices, excluding tablets, that is more reasonably accessible elsewhere, provided that the alternative location is identified, and the producing party shall produce such data from reasonably accessible sources along with documentation of the specific device on which it is also located, and the producing party shall do so without any additional request for production from the receiving party. Further, all such devices that

        were identified and that contain data that was not preserved shall be identified;

  ix.    Call history records maintained on mobile devices, cell phones or blackberries so long as copies of telephone bills that contain such records are preserved and made available when responsive;

  x.    Operating system files, executable files, and log files (including web server, web services, system, network, application log files and associated databases, analysis output caches, and archives of such data), unless such log files may be used to identify putative class members; and

  xi.    Other forms of ESI whose preservation requires extraordinary affirmative measures that are not utilized in the ordinary course of business.

C.    Absent a showing of good cause, no party need restore any form of media upon which backup data is maintained in a party's normal or allowed processes, including but not limited to backup tapes, disks, SAN, and other forms of media, to comply with its discovery obligations in the present case. For the avoidance of doubt, CDs, DVDs or other media that are used in the ordinary course of business to store original data shall be searched for responsive material.

**5.    Sources of ESI**

A.    The parties agree to limit searches of discoverable ESI as follows. Searches of ESI shall be limited to up to three (3) custodians per party. Each party shall designate

its own custodians, and, upon designation, disclose the identities of the custodians to the other party. In the event a party requests ESI from more than three (3) custodians, the requesting party shall reimburse the producing party for the additional expenses of searching for, collecting, reviewing, and producing any additional ESI.

      B.      No party may seek relief from the Court concerning compliance with the Protocol unless it has conferred with other affected parties.

      C.      If necessary, the Stipulated ESI Protocol shall be amended by written modification of all parties.

**6.      ESI Discovery Plan**

      A.      Each party will be responsible for reviewing and producing its own documents. To facilitate a cooperative, efficient, and cost-effective discovery process, the parties agree to meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery and to filter out ESI that is not subject to discovery.

**7.      General Production Format**

      A.      The parties will produce ESI in multi-page PDF format, provided that the documents do not become illegible or unusable or in any way alter existing metadata when converted to PDF format. A receiving party may make reasonable requests for production of the native version of any document converted to PDF. The producing party shall cooperate reasonably in responding to any such requests.

      B.      Certain documents that become illegible or unusable when converted to multi-page PDF format (Microsoft Excel files, other similar spreadsheet application files, Microsoft PowerPoint, Microsoft Project, and audio and video files), must be produced

in native format, unless they contain information that requires redaction. The parties reserve their rights to seek additional electronic documents in their native format, including natively redacted spreadsheet documents that preserve the searching, sorting, and filtering characteristics intrinsic to spreadsheet functionality.

  C. Non-electronic documents shall be scanned and produced in multi-page PDF format.

  **8.** **Production/Bates Numbers**

  A. Production or Bates numbers shall be assigned to each page of every document produced and will be a unique, consistently formatted identifier, i.e. alpha prefix along with a fixed length number (e.g., ABC0000001). The number of digits in the numeric portion of the bates number format should not change in subsequent productions.

  **9.** **PDF File Production Format**

  A. PDF file documents included with the electronic production shall use the below criteria:

    i. Documents produced in PDF format shall be re-named to reflect the production or Bates number corresponding to the first page of the document, e.g., ABC0000001.pdf.

    ii. Documents produced in PDF format will be produced as an individual multi-page PDF file for each document.

    iii. Production or Bates numbers will be endorsed on the lower right corner of each page.

    iv. Confidentiality designations, if any, will be endorsed on the lower left corner of each page.

**10.** **Native File Production Format**

A. Native file documents included with the electronic production shall use the below criteria:

    i. Documents produced in native format shall be considered a single page and assigned a single production or Bates number.

    ii. Documents produced in native format shall be re-named to reflect the production number, e.g., ABC0000001.xlsx.

    iii. The confidentiality designation, if any, to be entered in this action will appear as a suffix in the file name, e.g., ABC0000001_CONFIDENTIAL.xlsx.

B. If documents produced in native format are printed for use in deposition, motion or hearing, the party printing the document must label the front page of the file that is printed with the corresponding production number and, if applicable, the confidentiality designation assigned by the producing party to that file under an applicable protective order to be entered in this action.

C. Excel spreadsheets should be produced in native format with lock/protect features and password protection disabled.

**11.** **Embedded Objects**

A. The parties may exclude embedded objects from the production.

B. Following production of the files containing embedded objects, a receiving party

8

may make reasonable requests, with respect to specific embedded objects particularly identified in the requests, for production of these embedded objects as stand- alone files. The producing party shall cooperate reasonably in responding to any such requests.

**12.    Structured Data**

A.    To the extent a response to discovery requires production of electronic information stored in a database, the parties will consider whether all relevant information may be provided by querying the database for discoverable information and generating a report in a reasonably usable and exportable electronic file. A document reference sheet shall be provided to describe the purpose of the database and the meaning of all tables and column headers contained therein.

**13.    Email Threads**

A.    Email threads are email communications that contain prior or lesser-inclusive email communications that also may exist separately in the party's electronic files. A most inclusive email thread is one that contains all of the prior or lesser-inclusive emails, including attachments, for that branch of the email thread.

B.    Each party may produce only the most inclusive email threads.

C.    Similarly, a party may list the most inclusive email thread on any required privilege log.  However, if the most inclusive email thread contains privileged portions and would otherwise be logged in its entirety as privileged, then the thread must be produced with privileged material redacted and the redacted portion logged.

D.    Following production of the most-inclusive email threads, a receiving party may make reasonable requests, with respect to most-inclusive email threads particularly

identified in the requests, for production of individual lesser-inclusive emails. The producing party shall cooperate reasonably in responding to any such requests.

**14.      Standard for Addressing Privilege**

A.      Pursuant to Fed. R. Evid. 502(d) and (e), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in the pending case or in any other federal or state proceeding.  Disclosures among defendants' attorneys of work product or other communications relating to issues of common interest shall not affect or be deemed a waiver of any applicable privilege or protection from disclosure.  For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding.  A producing party may assert privilege or protection over produced documents at any time by notifying the receiving party in writing of the assertion of privilege or protection.  The receiving party must return, sequester, or destroy ESI that the producing party claims is privileged or work product protected as provided in Rule 26(b)(5)(B) and may use such ESI only to challenge the claim of privilege or protection.

B.      Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

C.      Communications involving inside or outside counsel for the parties related to this case that post-date the filing of the complaint need not be placed on a privilege log.

D. The parties agree to furnish logs that comply with Fed. R. Civ. P. 26(b)(5) and any other legal requirements for all documents withheld or redacted on the basis of privilege, attorney work product, or similar doctrines. Privilege logs may be produced on a rolling basis or after all productions are complete, but prior to the close of discovery.

E. Nothing in this Order shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work- product doctrine, or any other applicable privilege or immunity. The parties do not waive any objections to the production, discoverability, admissibility, or confidentiality of documents and ESI.

**14. Effect of Protocol and Reservation of Rights**

A. The parties agree to be bound by this Order during the sharing of ESI. Nothing in this Protocol precludes any party from challenging the admissibility, discoverability, production, or confidentiality of information produced under this Protocol or otherwise objecting to its production or use during the merits hearing or during any other hearing.

B. No party may seek relief from the Court concerning compliance with the Protocol unless it has first conferred with the other parties.

C. The Protocol may be amended by the written agreement of the parties, without the approval of the Court.

D. Nothing in this Protocol shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity.

E.  Nothing contained herein is intended to or shall serve to limit a party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production.

**15. Nothing contained in the Discovery Plan shall bind the Court, and it may in its discretion modify this Order as may be necessary in the interests of justice.**

**SO ORDERED**.

Dated: August 23, 2023

/s/ David W. Dugan
DAVID W. DUGAN
United States District Judge