IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| HEATHER MCCLAINE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 23-cv-1168-DWD |
| | ) |
| DX ENTERPRISES, INC., | ) |
| | ) |
| Defendant. | ) |

### MEMORANDUM AND ORDER

**DUGAN, District Judge:**

In this putative class action, Plaintiff Heather McClaine, on behalf of herself and all other persons similarly situated, seeks relief against Defendant DX Enterprises, Inc. pursuant to the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq*. ("BIPA"). Now before the Court is Defendant's Motion to Dismiss Plaintiff's First Amended Class Action Complaint and Motion to Strike (Doc. 26). Plaintiff filed a Memorandum in Opposition to Defendant's Motion (Doc. 27). For the reasons explained below, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

### Background

In the First Amended Class Action Complaint (Doc. 22), Plaintiff alleges the following:

Plaintiff was employed by Defendant DX Enterprises, an Indiana-based staffing and logistics company, from approximately March 2019 through September 2019 and

again in February or March 2021 (Doc. 22, p. 2).[1] Plaintiff worked at a Toyota facility in Lawrenceville, Illinois (*Id.*). At the Toyota Facility, Defendant utilized an attendance system where employees clocked in and out of their shifts by scanning their fingerprints into a biometric timeclock (*Id.*).

From these facts, Plaintiff alleges four counts against Defendant for violations of BIPA: (1) the improper capture and/or collection of biometric identifiers without written consent under § 15(b); (2) the failure to provide a written, publicly available retention policy under § 15(a); (3) the improper disclosure of biometric identifiers without written consent under § 15(d); and (4) the failure to store, transmit, and protect the biometric identifiers with reasonable care under § 15(e) (*Id.* at 14-19). Plaintiff seeks the certification of a class under Federal Rule of Procedure 23, statutory damages, injunctive relief, and attorneys' fees and costs (*Id.* at 19).

## **Legal Standards**

Defendant seeks a dismissal of the First Amended Class Action Complaint under Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) allows challenges to a pleading based upon the failure to state a claim for which relief may be granted. Fed. R. Civ. P. 12(b)(6); *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 825 (7th Cir. 2015) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)). To survive a Rule 12(b)(6) motion, which tests the sufficiency of the pleading but not its merits, the plaintiff must allege enough facts for the claim to be facially plausible. *Kloss v. Acuant, Inc.*, 462 F. Supp.

---

[1] The First Amended Class Action Complaint does not state whether Plaintiff is still employed by Defendant.

3d 873, 876 (7th Cir. 2020) (quoting *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 878 (7th Cir. 2012)); *Fosnight v. Jones*, 41 F.4th 916, 921-22 (7th Cir. 2022) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). There must be enough facts pled to draw inferences as to liability. *Fosnight*, 41 F.4th at 922 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A pleading need not allege "detailed factual allegations," but it must lift the claim above the speculative level. *Kloss*, 462 F. Supp. 3d at 876 (citing *Twombly*, 550 U.S. at 555). "Threadbare recitals," supported by conclusions, are insufficient. *Trivedi v. Wells Fargo Bank, N.A.*, 609 F. Supp. 3d 628, 631 (N.D. Ill. 2022) (quoting *Iqbal*, 556 U.S. at 678). When ruling on motions to dismiss, courts accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Fortres Grand Corp. v. Warner Bros. Ent. Inc.*, 763 F.3d 696, 700 (7th Cir. 2014). The Court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in the plaintiff's briefing, "so long as those facts are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (internal quotation marks omitted).

## Discussion

BIPA was enacted to regulate the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and biometric information. *Tims v. Black Horse Carriers, Inc.*, 2023 IL 127801, 216 N.E.3d 845, 850 (quoting 740 ILCS 14/5(g)). "Biometric identifier" includes retina or iris scans, voiceprints, hand scans, face geometry, and, as is relevant here, fingerprints. 740 ILCS 14/10. Here, Plaintiff invokes Sections

15(a), (b), (d), and (e) of BIPA, which relate to the retention, collection, disclosure, and storage of biometric identifiers.

    *a.*    *Section 15(a) Claim*

First, Defendant argues Plaintiff has failed to state a claim under § 15(a) of BIPA because she did not demonstrate that Defendant took "actual control" of the biometric data and, instead, "merely recites" the statutory requirements (Doc. 26, pp. 6-7). Section 15(a) of BIPA requires that "[a] private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying the biometric identifiers or biometric information." 740 ILCS 14/15(a). While "in possession of" is not defined by BIPA, courts have considered evidence that the defendant exercised "dominion or control" of the biometric identifiers to satisfy that requirement. *Wilk v. Brainshark, Inc.*, 631 F. Supp. 3d 522, 530-31 (N.D. Ill. 2022) (citing *Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d 960, 968 (N.D. Ill. 2020) ("*Heard I*").

Here, the Parties agree that the ordinary meaning of possession applies: "the act or condition of having in or taking into one's control or holding at one's disposal." *Clark v. Microsoft Corp.*, 688 F. Supp. 3d 743 (N.D. Ill. 2023) (quoting *People v. Ward*, 215 Ill. 2d 317 (2005); Webster's Third New International Dictionary 1770 (1986)); *see also Patterson v. Respondus, Inc.*, 593 F. Supp. 3d 783, 822 (N.D. Ill. 2022), *reconsideration denied*, No. 20-cv-7692, 2022 WL 7100547 (N.D. Ill. Oct. 11, 2022) (quoting *Rosenbach v. Six Flags Ent. Corp.*, 2019 IL 123186, ¶ 29). Pleading facts pertaining to how a defendant obtained, used, shared, and/or disposed of biometric data is generally sufficient to allege possession

4

under § 15(a). *See Patterson*, 593 F. Supp. 3d at 823 (plaintiff sufficiently alleged that defendants were in possession of her biometric data because she sketched out how they obtained or generated the data, how they may freely access the data, and how they may dictate how or when the data is shared or disposed of"); *Wilk*, 631 F. Supp. 3d at 531 (plaintiff sufficiently pled that defendant was in possession of her biometric data because she alleged that the defendant "obtained access to Plaintiff's uploaded videos containing her biometric data; used its technology to scan Plaintiff's facial geometry from those videos and analyze those scans; and then developed reports for Plaintiff's employer"); *Namuwonge v. Kronos, Inc.*, 418 F. Supp. 3d 279, 284 (N.D. Ill. 2019) (plaintiff sufficiently stated a claim under § 15(a) where the complaint alleged that the third-party employer gave fingerprint data to defendant, who supplied the database to the employer, such that defendant had "possession" of the data); *but see Heard I*, 440 F. Supp. 3d at 968-69 (plaintiff failed to plead that defendant was in possession of the biometric data, as necessary to state a claim under § 15(a), because he did not allege that defendant "exercised any form or control over the data or that it held the data at its disposal").

Plaintiff alleges that Defendant collected her and the Class's biometric identifiers by requiring employees to scan their fingerprints on a biometric timeclock every time they began work, ended work, and took breaks (Doc. 22, p. 3). Plaintiff further states that Defendant's website advertises that it provides daily attendance reporting to customers (*Id.* at 4). Because Defendant used fingerprints as its sole form of timekeeping for employees, rather than other timekeeping methods such as identification numbers or badges, Plaintiff alleges that Defendant used the biometric identifiers scanned into the

5

timeclocks to provide the advertised daily attendance reporting to companies for which it provided staffing services (*Id.*). These allegations, relating to how Defendant collected and used the biometric identifiers to provide employee attendance information to its customers, are adequate to plead that Defendant took control of the biometric data and held it at its disposal. Accordingly, Plaintiff has plausibly alleged that Defendant had "possession" of the biometric data under § 15(a), as necessary to survive Defendant's motion to dismiss.

Defendant's remaining arguments in favor of dismissal are minimal and essentially identical: "by simply reciting the elements of the cause of action and making conclusory statements about Defendant's conduct," Plaintiff fails to state causes of action under Sections 15(b), (d), and (e) (Doc. 26, pp. 7-9). The Court addresses each claim in turn.

    b.    *Section 15(b) Claim*

Like her § 15(a) claim, Plaintiff plausibly alleges facts to state a claim under § 15(b) of BIPA. Under § 15(b) of BIPA, a private entity may not "collect, capture, purchase, receive through trade, or otherwise obtain" biometric identifiers without first obtaining written, informed consent. 740 ILCS 14/15(b); *see also Heard v. Becton, Dickinson & Co.*, 524 F. Supp. 3d 831, 840-41 (N.D. Ill. 2021) ("*Heard II*"). Again, Defendant allegedly required its employees, including Plaintiff, to clock in and out of work by scanning their fingerprints on a biometric timeclock (Doc. 22, pp. 3-4). Plaintiff repeatedly states in the First Amended Class Action Complaint that Defendant captured these biometric identifiers without first obtaining her and the Class's written consent (*Id.* at 3, 8, 15). Other

6

courts have found similar allegations sufficient to state a § 15(b) claim. *See, e.g.*, *Heard II*, 524 F. Supp. 3d at 841 (Section 15(b) claim survived a motion to dismiss because plaintiff alleged that defendant's device scanned user's fingerprints, extracted the data to create a user template, and then stored the biometric identifiers on the device and in defendant's servers); *Figueroa v. Kronos Inc.*, 454 F. Supp. 3d 772, 783 (N.D. Ill. 2020) (plaintiffs stated a "textbook violation of § 15(b)" where they alleged that "when Plaintiffs enrolled in and used their employers' timekeeping systems, [Defendant] obtained their biometric data without first informing them or obtaining from them a written release"); *but see, e.g.*, *Stauffer v. Innovative Heights Fairview Heights, LLC*, No. 20-cv-46, 2022 WL 3139507, at *6 (S.D. Ill. Aug. 5, 2022) (granting a motion to dismiss a § 15(b) claim because "[n]owhere d[id] Plaintiff allege that [Defendant] itself stored biometric information on its own computers or servers, or that [Defendant] used the biometric information for its own purposes. In fact, Plaintiff d[id] not allege that [Defendant] actually accessed this information"). As Plaintiff has pled facts alleging that Defendant collected, captured, or otherwise obtained her biometric identifiers without first obtaining her consent as defined in § 15(b), the Court declines to dismiss the § 15(b) claim.

    c.    *Section 15(d) Claim*

Next, § 15(d) of BIPA provides that "[n]o private entity in possession of a biometric identifier or biometric information may disclose, redisclose, or otherwise disseminate a person's or a customer's biometric identifier" without consent. 740 ILCS 14/15(d). Plaintiff alleges that, upon information and belief, Defendant disclosed biometric timeclock users' fingerprint data to "other, currently unknown, third parties . . . that host

7

biometric data in their data center," including "third-party timekeeping vendors and/or Toyota" (Doc. 22, p. 7).

Though these allegations are thin, it is plausible that fingerprints on Defendant's biometric timeclocks are disclosed to third parties that host biometric data in their data centers. *C.f. Heard II*, 524 F. Supp. 3d at 843. Plaintiff's admission that these third parties are "currently unknown" is also not itself a reason to dismiss the claim. *See Figueroa*, 454 F. Supp. 3d at 785 (allegations that "Defendant improperly disseminated [Plaintiff's] biometric identifiers and biometric information to other currently unknown third parties, which hosted the biometric data in their data centers" were "a textbook violation of § 15(d)"). According to the First Amended Class Action Complaint, Defendant did not obtain Plaintiff or the Class's consent, so there would be little way for them to know exactly to whom the data was disclosed. *See Heard* II, 524 F. Supp. 3d at 843 ("In turn, because [Defendant] does not inform users of its [] devices 'to whom the data is disclosed,' much less obtain their consent to do so, Plaintiff has stated a claim for § 15(d)."). In contrast, courts have dismissed claims under § 15(d) where the plaintiff merely parrots BIPA's language without factual support. *See Jones v. Microsoft Corp.*, 649 F. Supp. 3d 679, 685 (N.D. Ill. 2023) ("Unlike *Heard II* and *Figueroa*, Jones does not allege that [Defendant] disseminated her biometric data to any third-party data centers or any tangible third parties whatsoever."); *Namuwonge*, 418 F. Supp. 3d at 285 (plaintiff alleged she "ha[d] no idea whether any Defendant sells, discloses, re-discloses, or otherwise disseminates their biometric data" and "did not allege any other specifics related to any disclosures by [Defendant] to a third party."). Here, Plaintiff plausibly alleges that

8

biometric identifiers are disclosed to third parties, albeit currently unknown ones. But Plaintiff also names one third-party to whom Defendant allegedly disseminated the fingerprint data: Toyota (Doc. 22, p. 7). For these reasons, Plaintiff's claim sufficiently alleges facts for the § 15(d) claim to survive dismissal.

  d.  *Section 15(e) Claim*

Finally, § 15(e) requires that private entities must protect biometric data in its possession from disclosure using "the reasonable standard of care within the private entity's industry . . . [and] in a manner that is the same as or more protective than the manner in which the private entity stores, transmits, and protects other confidential and sensitive information." 740 ILCS 14/15(e). As the Court previously found Plaintiff sufficiently alleged that Defendant was in possession of the biometric data, the only remaining issue is whether Plaintiff alleges Defendant did not use a reasonable standard of care in storing, transmitting, and protecting the data from disclosure. Defendant contends Plaintiff's § 15(e) claim should be dismissed because it "speculate[s] as to what the reasonable standard of care is within the industry, and then merely recite[s] the Defendant's obligations under BIPA" (Doc. 26, pp. 8-9). Upon review of the First Amended Class Action Complaint, the Court agrees that Plaintiff has failed to state a claim under § 15(e).

First, Plaintiff alleges that because BIPA has existed since 2008, Defendant had the opportunity to investigate and comply with its requirements, but failed to do so (Doc. 22, p. 12). Plaintiff further alleges Defendant possesses "awareness of its requirement to comply with certain employment laws and regulations" because it conducts background

checks, drug screenings, online testing, and in-house orientation programs (*Id.*). The Court fails to see how Defendant's compliance with other regulations is relevant to its alleged non-compliance with BIPA.

As to § 15(e), specifically, Plaintiff further alleges that Defendant failed to meet the industry standard of care by "virtue of the following acts," and then goes on to recite the elements of Sections 15(a), (b), and (d) of BIPA (*Id.* at 14). Plaintiff does not allege any facts relating to Defendant's failure to protect the biometric data in its possession. *But see Hayes v. CGB Enterprises, Inc.*, No. 23-cv-3296, 2024 WL 3091083, at *6 (C.D. Ill. June 20, 2024) (allegations that the defendant maintained a privacy policy governing the collection and use of personal information of its website's users, but did not maintain a similar written policy regarding the collection, storage, and use of Plaintiff's biometrics," was sufficient to state a claim under § 15(e)). Plaintiff "provides no allegations regarding how [Defendant] stores biometric data or how its practices fail to comply with the reasonable standard of care." *Delgado v. Meta Platforms, Inc.*, No. 23-CV-04181-SI, 2024 WL 818344, at *9 (N.D. Cal. Feb. 27, 2024). These conclusory allegations do not put Defendant on notice of the challenged conduct, as is required to survive a Rule 12(b)(6) motion. *Twombly*, 550 U.S. 555. Therefore, the Court grants the motion to dismiss as to the § 15(e) claim, without prejudice.

## Motion to Strike

    a.    *Allegations that Defendant Acted Recklessly or Intentionally*

The Court turns next to Defendant's contention that we must strike Plaintiff's assertions that Defendant recklessly or intentionally violated BIPA.

10

As an initial matter, Defendant's argument is contradictory. While Defendant requests that paragraphs 71-80 of the First Amended Class Action Complaint be stricken, it also argues that Plaintiff states "conclusory, general allegations" that are "insufficient to demonstrate recklessness and save Plaintiff's claims from dismissal" (Doc. 26, pp. 9-10).

It is unclear whether Defendant wishes to strike or seek dismissal of these claims. Rule 12(f) permits the court to strike parts of the complaint that are "redundant, immaterial, impertinent or scandalous." Fed. R. Civ. P. 12(f). "Motions to strike . . . are disfavored and will usually be denied." *Hoffman-Dombrowski v. Arlington Int'l Racecourse, Inc.*, 11 F. Supp. 2d 1006, 1009 (N.D. Ill. 1998); *see also Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distributors Pty. Ltd.*, 647 F.2d 200, 201 (D.C. Cir. 1981). Statements or allegations should not be stricken from a pleading "unless it is clear that it can have no possible bearing on the subject matter of the litigation." *Capitol Indem. Corp. v. Tranel Devs., Inc.*, 144 F.R.D. 346, 347 (N.D. Ill. 1992). As discussed below, Plaintiff's allegations that Defendant acted recklessly or intentionally are relevant to the issue of damages. And none of the allegations fall into the narrow categories of Rule 12(f). Defendant's motion to strike, which attempts to attack the sufficiency of Plaintiff's claims, exceeds the proper scope of a motion to strike. *Ehlerding v. Am. Mattress & Upholstery, Inc.*, 208 F. Supp. 3d 944 (N.D. Ind. 2016) (collecting cases) ("Rule 12(f) is not the proper vehicle to attack the sufficiency of Plaintiff's claims, which is essentially what Defendant[] [is] attempting to do."); *see also Herrera v. Di Meo Bros., Inc.*, 529 F. Supp. 3d 819, 833 (N.D. Ill. 2021).

Defendant's request does not fare better as a motion to dismiss under Rule 12(b)(6). Paragraphs 71-80 of the First Amended Class Action Complaint pertain to allegations that Defendant acted intentionally or recklessly in its violations of BIPA and relate to the amount of damages Plaintiff may be awarded. BIPA authorizes a prevailing party to recover the greater of $1,000 in liquidated damages for each negligent violation or $5,000 in liquidated damages for each reckless or willful violation. 740 ILCS 14/20.

Courts have taken conflicting approaches to the issue of whether a complaint must set forth detailed allegations of the defendant's state of mind to state a claim under BIPA. A minority of courts have treated BIPA's four damages categories as separate claims for relief, so that a plaintiff must plausibly allege facts of defendant's recklessness or intentional violation of BIPA to survive a Rule 12(b)(6) motion to dismiss. *Sloat v. Camfil USA, Inc.*, No. 23-cv-5125, 2024 WL 1556268, at *4 (N.D. Ill. Apr. 10, 2024) (citing *Kukovec v. Estee Lauder Cos., Inc.*, No. 22-cv-988, 2022 WL 16744196, at *8 (N.D. Ill. Nov. 7, 2022); *Rogers v. CSX Intermodal Terminals, Inc.*, 409 F. Supp. 3d 612, 619 (N.D. Ill. 2019)).

In contrast, most courts consider requests for a particular type of remedy, such as liquidated damages, distinct from an underlying claim for relief under BIPA. *See id.* (collecting cases); *see also Davis v. Passman*, 442 U.S. 228, 239 (1979) ("[W]hether a litigant has a 'cause of action' is analytically distinct and prior to the question of what relief, if any, a litigant may be entitled to receive."); *Jones v. Butler*, 663 F. App'x 468, 470 (7th Cir. 2016). The distinction between a cause of action and requested relief is also evidenced in Rule 8, which requires "a short and plain statement of the claim showing that the pleader

12

is entitled to relief" in subsection (a)(2) that is separate from "a demand for the relief sought" in subsection (a)(3). Fed. R. Civ. P. 8(a)(2), (3); *Sosa*, 600 F. Supp. 3d at 874.

The Court is persuaded by the majority's approach. Plaintiff's assertion that Defendant acted intentionally or recklessly to entitle her to the higher liquidated damages of $5,000 per violation is not a "claim" subject to dismissal under Rule 12(b)(6); it is a demand for relief. *Sosa*, 600 F. Supp. 3d at 874. Plaintiff does not need to allege facts that plausibly suggest recklessness or intentional conduct to show her entitlement to this form of relief. *Id.* (collecting cases); *see also Cothron v. White Castle Sys., Inc.*, 467 F. Supp. 3d 604, 615 (N.D. Ill. 2020) ("Rule 12(b)(6) does not require [the plaintiff] to plead the facts that will determine the amount of actual damages she may be entitled to recover" under BIPA). Neither does Plaintiff need to allege facts suggesting "any level of culpability to plausibly state a BIPA claim in the first place." *Sosa*, 600 F. Supp. 3d at 874; *see also Snider v. Heartland Beef, Inc.*, 479 F. Supp. 3d 762, 772 (C.D. Ill. 2020); *Peatry v. Bimbo Bakeries USA, Inc.*, No. 19-cv-2942, 2020 WL 919202, at *6 (N.D. Ill. Feb. 26, 2020). For these reasons, the Court declines to dismiss the allegations in paragraphs 71-80 under Rule 12(b)(6).

    b.    *Class Allegations*

Next, the Court addresses the motion to strike the class allegations from the First Amended Class Action Complaint.

A court's determination of whether a class action can proceed is governed by Federal Rule of Civil Procedure 23. Rule 23(c)(1)(A) requires that a court determine whether to certify an action as a class action "[a]t an early practicable time after a person sues or is sued as a class representative." Fed. R. Civ. P. 23(c)(1)(A). It is most often

impracticable for the court to determine class certification at the pleadings stage, but sometimes it is clear from the complaint that class certification is inappropriate. *Hill v. Wells Fargo Bank, N.A.*, 946 F. Supp. 2d 817, 829 (N.D. Ill. 2013) (citing *Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 160 (1982)). A court "need not delay a ruling on certification if it thinks that additional discovery would not be useful in resolving the class determination." *Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 563 (7th Cir. 2011). However, "if the dispute is factual in nature and 'discovery is needed to determine whether a class should be certified' then a motion to strike the pleadings is premature." *Blossom v. Wexford Health Sources, Inc.*, No. 22-cv-361, 2023 WL 197020 (S.D. Ill. Jan. 17, 2023) (citing *Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 295 (N.D. Ill. 2014); *Boatwright v. Walgreen Co.*, No. 10 C 3902, 2011 WL 843898, *2 (N.D. Ill. Mar. 4, 2011))). For the reasons stated below, the motion to strike is premature and will be denied.

First, Defendant argues the class definition should be stricken as vague, ambiguous, and overbroad (Doc. 26, p. 11). Rule 23 "requires that a class be defined . . . clearly and based on objective criteria." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015); Fed. R. Civ. P. 23. Courts refer to this implicit requirement as "ascertainability," and it focuses on the adequacy of the class definition itself. *Mullins*, 795 F.3d at 659. Classes that are defined too vaguely fail to satisfy Rule 23's clear definition component. *Id.* However, class definitions may avoid vagueness by "identify[ing] a particular group, harmed during a particular time frame, in a particular location, in a particular way." *Id.* Here, Plaintiff defines the class as:

> All employees of DX Enterprises, Inc., f/k/a DX Enterprises, LLC, d/b/a DXE, d/b/a GCQA, LLC ("DXE"), including but not limited to employees hired by DXE and assigned to the Toyota manufacturing facility, who scanned their fingerprints and/or other biometric identifiers into the biometric timeclock mechanism, or whose biometric identifiers as defined under 740 ILCS 14/10 were utilized in any manner by DXE, between February 2018 and the present without first executing a written release.

(Doc. 22, p. 8).

Plaintiff's class definition identifies a particular group at a particular location: DXE employees assigned to the Toyota manufacturing facility. The group was harmed in a particular way: having their fingers and/or other biometric identifiers scanned into the biometric timeclock mechanism without first executing a written release in violation of BIPA. As to the time frame, however, Defendant contends that "present" does not provide a definitive end-date, such that Defendant will be unable to determine who belongs in the class. The Court notes that the time frame of February 1, 2018, to "present" is not particularly precise. However, it could be easily resolved by inserting a time limitation in the class definition. Defendant also states that the definition is ambiguous because it does not define "written release." Regardless, for the reasons stated below, striking the class definition at this stage would be premature.

Defendant also contends that the class definition is based on the success on the merits (Doc. 26, p. 11). This is because the class is limited to those who scanned their fingerprints and/or biometric identifiers in the biometric timeclock "without first executing a written release," which is a requirement under § 15(b) of BIPA (*Id.*).[2] Courts

---

[2] Defendant also argues that the definition is ambiguous because it does not define "written release" (Doc. 26, p. 11). However, "written release" is defined within BIPA as "informed written consent or, in the context

15

have consistently found that classes defined by success on the merits (*i.e.*, "fail-safe classes") are not properly defined for purposes of Rule 23. *Mullins*, 795 F.3d at 660 (collecting cases); *see also Heard II*, 524 F. Supp. 3d at 848. "A case can't proceed as a class action if the plaintiff seeks to represent a so-called fail-safe class—that is, a class that 'is defined so that whether a person qualifies as a member depends on whether the person has a valid claim.'" *McCaster v. Darden Restaurants, Inc.*, 845 F.3d 794, 799 (7th Cir. 2017) (quoting *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012)).

"Defining a class so as to avoid, on one hand, being over-inclusive and, on the other hand, the fail-safe problem is more of an art than a science." *Messner*, 669 F.3d at 825. Here, Plaintiff's class definition presents fail-safe issues. While Plaintiff's definition does not outright state that the class is limited to those employees "whose biometric identifiers . . . were utilized in any manner by DXE *in violation of BIPA*," the inclusion of the statutory requirement "without first executing a written release" is functionally equivalent, such that it includes only those who have a valid claim under BIPA in the class. *See Heard II*, 524 F. Supp. 3d at 848 ("The proposed definition is not 'all users in the State of Illinois who had their fingerprints collected, captured, received, or otherwise obtained or disclosed by BD *in violation of BIPA*.' Such a definition would clearly tie class membership to [Defendant]'s liability." (emphasis in original)).

---

of employment, a release executed by an employee as a condition of employment." 740 ILCS 14/10. Defendant clearly knows this, as its fail-safe argument is based on the fact that "the execution of a written release is a requirement under Section 15(b)" (Doc. 26, p. 11). This nitpicking of the definition is unnecessary and meritless.

Nevertheless, the appropriate remedy for these class definition issues is not to strike the class allegations from the complaint. *See Messner*, 669 F.3d at 825 (an over-inclusivity or fail-safe "problem can and should be solved by refining the class definition rather than by flatly denying class certification on that basis"); *see also Rysewyk v. Sears Holdings Corp.*, No. 15-cv-4519, 2015 WL 9259886, at *8 (N.D. Ill. Dec. 18, 2015); *Wolfkiel v. Intersections Ins. Servs. Inc.*, 303 F.R.D. 287, 294 (N.D. Ill. 2014). Neither is Plaintiff required to amend the complaint to outline the exact contours of the proposed class prior to class certification. *Chapman v. First Index, Inc.*, 796 F.3d 783, 785 (7th Cir. 2015) ("Class definitions are not included in the pleading requirements of Rule 8(a)."). Instead, Rule 8(a)(2) simply requires the complaint to provide "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal marks omitted). Here, the class definition is sufficient to provide fair notice to Defendant of the kind of class Plaintiff seeks to certify, as necessary under Rule 8(a)(2). *Womick v. Kroger Co.*, No. 21-cv-00574, 2022 WL 1266630 (S.D. Ill. Apr. 28, 2022) (citing *Chapman*, 796 F.3d at 785). This is fair notice is also evidenced by the fact that Defendant previously stated in its Notice of Removal that it is aware of 579 members in the class (Doc. 1, p. 6).

Furthermore, Plaintiff will have the opportunity to refine the class definition as the parties engage in discovery at the class certification stage. *Ali v. City of Chicago*, 34 F.4th 594, 603 (7th Cir. 2022). Therefore, the Court will not strike the class allegations at this time. Plaintiff may modify the proposed class definition, or the Court may do so on its own initiative, at the class certification stage. *Chapman*, 796 F.3d at 785.

### Conclusion

For the reasons stated above, Defendant's Motion to Dismiss and Motion to Strike (Doc. 26) is **GRANTED IN PART** and **DENIED IN PART**. The § 15(e) claim is **DISMISSED** without prejudice. The remainder of the motion to dismiss is **DENIED** in its entirety. The motion to strike the class allegations is **DENIED** without prejudice.

**SO ORDERED.**

Dated: August 19, 2024

_____
DAVID W. DUGAN
United States District Judge