IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS

| | |
|---|---|
| HEATHER MCCLAINE, on behalf of herself and all other persons similarly situated, known and unknown,<br><br>Plaintiff,<br><br>v.<br><br>DX ENTERPRISES, INC. et. al,<br><br>Defendant. | Case No. 3:23-cv-01168-DWD<br><br>Hon. David W. Dugan |

**PLAINTIFF'S UNOPPOSED MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND AWARD
OF ATTORNEYS' FEES AND TO ADVANCE AND CONDUCT REMOTELY THE
FINAL APPROVAL HEARING**

I.   **Introduction and Background.**

On February 27, 2023, Plaintiff Heather McClaine filed this class action lawsuit against DX Enterprises, alleging violations of the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 *et seq*. Specifically, Plaintiff alleged that Defendant violated BIPA by collecting, storing, and using employees' biometric data without providing required notices, obtaining written consent, maintaining a publicly available retention policy, or following proper data protection standards. ECF No. 22, pp. 3-5. After Defendant removed the case to federal court and filed two motions to dismiss, the parties engaged in extensive settlement negotiations from October 5, 2023, through March 5, 2024, during which time the case was stayed. ECF Nos. 21; 43.

After extensive written discovery, the parties reached a settlement in September 2024. The settlement establishes a total fund of $1,519,796.84, comprising a $1,432,617.64 Class Fund ($2,444.74 per Settlement Class Member) and an $87,179.20 Subclass Fund. See ECF No. 57. The Settlement Class includes 586 individuals who provided biometric data to Defendant between February 27, 2018,

1

and the preliminary approval date. *Id.* A subclass of 86 members consists of those rehired during the class period. *Id.* The Class is defined as:

> All persons who had their biometrics collected and/or biometric information and/or data collected, captured, received, converted, stored, obtained, shared, taken, used, disclosed, or disseminated by Defendant in Illinois between February 27, 2018, and the date of preliminary approval without first executing a written release. Excluded from the Settlement Class are: (1) any Judge or Magistrate presiding over this Action and members of their families; (2) the Defendant, Defendant's subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest; (3) persons who properly execute and file a timely request for exclusion from the Settlement Class; and (4) the legal representatives, successors, or assigns of any such excluded person.

ECF No. 57. Defendant estimates there are 586 Settlement Class Members. The Settlement Subclass is defined as:

> The Settlement Subclass will be defined to consist of only those members of the Settlement Class who were hired by DX Enterprises, Inc. more than one time during the period of February 27, 2018 to the date of preliminary approval and who had their biometrics collected and/or biometric information and/or data collected, captured, received, converted, stored, obtained, shared, taken, used, disclosed, or disseminated by Defendant in Illinois without first executing a written release.

*Id.* Defendant represents that from February 27, 2018, to April 11, 2023: 72 employees were rehired once; 11 employees were rehired twice; and 3 employees were rehired three times. *Id.*

On January 7, 2025, this Court granted preliminary approval of the settlement and authorized the distribution of class notice. ECF No. 57. The Court's preliminary approval order set forth the schedule for final approval proceedings, including the March 6, 2025, deadline for exclusions and objections, and scheduled the Final Approval Hearing for April 15, 2025, at 10:00 a.m. *Id.* Plaintiff now moves for final approval of the class action settlement, which provides substantial monetary relief to class members while avoiding the risks and delays of continued litigation, and requests that this Court advance the final approval hearing, and hold it remotely.

2

**II.     Results of Notice Process.**

Following this Court's Preliminary Approval Order on January 7, 2025, the Settlement Administrator, Simpluris, initiated the Court-approved notice program. The Settlement Administrator received a class list containing contact information for all 586 Settlement Class Members, including 86 Subclass Members. See Ex. 1, Decl. of Settlement Administrator, p. 2. Upon receipt, Simpluris processed the class data through the National Change of Address (NCOA) database to verify and update addresses prior to the initial mailing. *Id.* at p. 3.

On February 5, 2025, the Settlement Administrator sent the Court-approved Notice Packet ("Notice Packet") to all Settlement Class Members. *Id.* at p. 4. The Notice Packet detailed the nature of the action, the class definition, the terms of the settlement, class members' rights and options under the settlement, and the deadlines for exercising those rights. *Id.* at p. 5; *Id.* at Exhibit B. The Notice clearly explained that class members had until March 6, 2025, to submit objections or requests for exclusion from the settlement. *Id.* at p. 5. For any Notice Packets returned as undeliverable, Simpluris conducted skip-trace searches to locate updated addresses and promptly re-mailed the Notice Packets to any new addresses identified. *Id.* at p. 6. Of the 586 packets mailed, 151 were returned as undeliverable. 105 were remailed, and only forty-six (46) were ultimately undeliverable. *Id.* As of the March 6, 2025 objection and exclusion deadline, the Settlement Administrator reports no objections returned (online or mailed), and only two online exclusion request forms completed. *Id.* at p. 11, 13; Ex. 2, March 7, 2025 summary. The Settlement Administrator has provided weekly status reports throughout the notice period, confirming the successful implementation of the Court approved notice program. *Id.* at p. 4(i).

The notice program implemented in this case satisfies both Rule 23 and due process requirements, as it provided the best notice practicable under the circumstances through individual U.S. Mail notice to all Settlement Class Members at their last known or updated addresses. Sending

3

notice by mail to the last known address of each settlement class member, coupled with efforts to send notice to updated or corrected addresses after additional searches, is undoubtedly the most practicable and widely accepted means of disseminating information about the settlement. *See, e.g., Hughes v. Merit Lincoln Park LLC*, No. 08-CV-6191, 2011 WL 6028535, at *2 (N.D. Ill. Dec. 5, 2011) (". . . .As long as the method of providing the notice is "reasonably calculated, under all the circumstances," to inform the class members of the pendency of the class action, due process considerations have been satisfied.") (internal citations omitted); *In re VMS Ltd. P'ship Sec. Litig.*, No. 90 C 2412, 1995 WL 355722, at *1 (N.D. Ill. June 12, 1995); *Arango v. Landry's, Inc.*, No. 12 C 9354, 2015 WL 5673878, at *1 (N.D. Ill. Aug. 27, 2015) (holding notice to class members to be adequate where it was sent via First Class Mail).

### III. This Court Should Approve the Proposed Settlement as Fair, Reasonable, and Adequate.

Federal policy strongly favors settlement. *Pesek v. Donahue*, No. 04 C 4525, 2006 WL 1049969, at *4 (N.D. Ill. Feb. 9, 2006) ("There is a strong federal policy favoring the voluntary resolutions of disputes."); Newberg on Class Actions, §13:44 ("The compromise of complex litigation is encouraged by the courts and favored by public policy"). The advantages of settlement to the parties and the courts are particularly apparent in the compromise of class actions, which are "often complex, drawn out proceedings demanding a large share of finite judicial resources." *Mayfield v. Barr*, 985 F.2d 1090, 1092 (D.C. Cir. 1993); *see also Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("In the class action context in particular, 'there is an overriding public interest in favor of settlement,' [which] minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources").

#### A. The Settlement Meets All Requirements for Final Approval.

Before giving final approval to a class action settlement, this Court must find that the settlement is fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e). "Courts consider five factors

4

when evaluating a class settlement: (1) the strength of Plaintiff's case compared to the terms of the proposed settlement; (2) the likely complexity, length, and expense of continued litigation; (3) the amount of opposition to the settlement among affected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and amount of discovery completed." *Young v. Rolling in the Dough, Inc.*, No. 1:17-CV-07825, 2020 WL 969616, at *3 (N.D. Ill. Feb. 27, 2020).

### i. The Strength of Plaintiff's Case Relative to the Settlement Terms Supports Approval.

The settlement provides substantial monetary relief to class members while avoiding significant litigation risks. Each of the 586 Settlement Class Members will receive approximately $2,444.74, representing meaningful compensation for their BIPA claims. *See* Exhibit 3, Settlement Agreement. Additionally, the 86 Subclass Members will receive supplemental payments from the $87,179.20 Subclass Fund. Ex. 3, p. 7(e). This recovery is particularly favorable given the uncertainties of litigation, including Defendant's pending Motion to Dismiss and potential defenses regarding the statute of limitations, actual damages requirements, and constitutional challenges to BIPA that could have resulted in no recovery for the class.

### ii. The Complexity, Length, and Expense of Continued Litigation Favor Settlement.

Absent settlement, this litigation would likely continue for several more years through dispositive motions, class certification proceedings, potential interlocutory appeals, trial, and post-trial appeals. The parties have already engaged in extensive written discovery and motion practice, including two motions to dismiss. Continuing through trial would require substantial additional discovery, expert testimony, and briefing on complex legal issues surrounding BIPA's requirements and damages provisions. The settlement provides immediate, certain relief to class members while avoiding these delays and risks.

### iii. The Absence of Opposition Supports Settlement Approval.

The reaction of the class strongly supports approval of the settlement. Out of 586 class members who received notice, only two (less than 1%) have opted out and none have objected to the settlement. This minimal opposition demonstrates that the class members view the settlement terms favorably:

> The parties support the approval of the settlement. No class member objected or opted out to the settlement. This factor weighs in favor of approval. *See Hispanics United of DuPage Cnty. v. Vill. of Addison, Ill.*, 988 F.Supp. 1130, 1166, 1169 (N.D. Ill. 1997) ("the court may approve a fair settlement over objections by some or even many class members); *Mangone v. First USA Bank*, 206 F.R.D. 222, 226-27 (S.D. Ill. 2001) (same); *see also Wal-Mart Stores, Inc. v. VISA U.S.A., Inc.*, 396 F.3d, 96, 118 (2d Cir. 2005) (noting that "[i]f only a small number of objections are received, that fact can be indicative of the adequacy of the settlement.").

*Young*, 2020 WL 969616, at *5.

### iv.     The Opinion of Experienced Counsel Favors Approval.

Settlement Class Counsel have extensive experience litigating BIPA and other complex class actions. Based on their evaluation of the strengths and weaknesses of the claims, the risks of continued litigation, and the benefits provided by the settlement, counsel strongly believe the settlement is fair, reasonable, and adequate. See Ex. 4, Barack Decl. to Final Approval Motion, at ¶ 28. Settlement Class Counsel's opinion is informed by review of extensive discovery materials, including employment records and information about Defendant's biometric data collection practices, as well as experience litigating similar BIPA cases. *Id.* The opinion of experienced class counsel supporting settlement also weighs this factor in favor of approval. *Young*, 2020 WL 969616, at *5.

### v.     The Stage of Proceedings and Discovery Completed Support Approval.

Although the settlement was reached before class certification briefing, the parties conducted significant discovery and investigation to evaluate the claims and defenses. ECF No. 56, ¶¶ 8-10. The parties exchanged extensive written discovery between 2023-2024 and issued third-party subpoenas. *Id.* This discovery, combined with the parties' settlement negotiations from October 2023 through March 2024, provided counsel with sufficient information to evaluate the strengths and weaknesses

of their positions and the fairness of the settlement terms. *See Young*, 2020 WL 969616 at *5 (finding this factor supported approving settlement where the parties had exchanged sufficient information to fully evaluate the claims and defenses asserted in the case.).

### B. The Settlement Provides Substantial Benefits that Outweigh the Risks of Continued Litigation.

The $1,519,796.84 settlement fund provides meaningful compensation to class members while avoiding the risks of continued litigation. The per-person recovery of $2,444.74 represents a substantial portion of the potential statutory damages available under BIPA, which provides for damages of $1,000 for negligent violations and $5,000 for intentional or reckless violations. Given the uncertainties surrounding whether Plaintiff could prove willful violations and overcome Defendant's various defenses, this recovery represents an excellent result for the class.

In addition, this recovery reflects a greater-than-average outcome for biometric privacy class action participants. According to an analysis published by the Progress & Freedom Foundation in 2023, examining various cases under Illinois' Biometric Information Privacy Act (BIPA), the average payouts to class members have ranged from $106 to $2,281, reflecting the variability in settlement structures, the number of class members involved, and the bases for liability in each matter.[1]

Moreover, the settlement provides additional compensation to Subclass Members who were subject to multiple collections of their biometric data upon rehire, addressing the increased statutory violations they potentially experienced. The structure of the settlement ensures fair compensation while recognizing the varying degrees of exposure among class members.

### C. The Settlement Satisfies All Requirements of Rule 23(e).

The settlement meets all requirements for approval under Federal Rule of Civil Procedure 23(e). The settlement was reached through arm's-length negotiations between experienced counsel

---

[1] *Who Benefits from BIPA? Analysis of Cases Under Illinois' Biometrics Law*, Progress & Freedom Foundation, 2023.

7

after extensive exchange of information and discovery. The terms of the settlement treat all class members fairly, with standardized payments to the Settlement Class and additional compensation for the Settlement Subclass based on objective criteria. The proposed service award and attorneys' fees are reasonable and were fully disclosed in the class notice. *See Young*, 2020 WL 969616, at *3 (approving of Rule 23 certification where there were several hundred class members, rendering joinder impracticable, where there were common issues of fact and law among all class members, as here). For all these reasons, this Court should grant final approval of the settlement as fair, reasonable, and adequate under FRCP 23(e).

## IV.     Attorneys' Fees and Costs.

The Court should approve Class Counsel's request for attorneys' fees of 35% of the Settlement Fund ($532,929.89) and reimbursement of litigation costs in the amount of $666.97. Representative Plaintiff, Heather McClaine, also seeks payment to Simpluris, the Settlement Administrator, in the amount of $11,570.16. As disclosed in the Notice to Settlement Class Members, Class Counsel would seek attorneys' fees and costs from the Settlement Fund, and settlement administration costs were also included in the notice, with a cap of $15,000. The Notice clearly explained the fee request and its impact on class member recoveries, and no Settlement Class Member objected to the requests.

It is well established that reimbursement of litigation expenses and settlement administration costs from the settlement fund is standard and proper. See, e.g., *Zolkos v. Scriptfleet, Inc.*, No. 12-CV-8230, 2015 WL 4275540, at *3 (N.D. Ill. July 13, 2015) (approving reimbursement of litigation costs and settlement administration expenses from the settlement fund). Here, Class Counsel's costs are less than $1,000, and less than the $15,000 cap on settlement administration costs. These costs are reasonable and appropriately approved. See *Young*, No. 17-CV-07825, 2020 WL 969616, at *6.

### A.  The Requested Fee Award is Reasonable Under the Percentage Method.

It is well-established that attorneys who create a common fund for the benefit of a class are entitled to reasonable compensation for their services. *See Young*, 2020 WL 969616, at *6. Courts generally favor an award of fees from a common fund, as called for by the proposed settlement in this case. As the Supreme Court has explained:

> [T]his Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole Jurisdiction over the fund involved in the litigation allows a Court to prevent inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit.

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (citations omitted). When awarding fees from a common fund, the Seventh Circuit has directed district courts to "do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *Koszyk v. Country Fin. a/k/a CC Servs., Inc.*, No. 16 CIV. 3571, 2016 WL 5109196, at *3 (N.D. Ill. Sept. 16, 2016), *quoting In re Synthroid Mktg. Litig*, 264 F.3d 712, 718 (7th Cir. 2001). "The class counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client." *Retsky Fam. Ltd. P'ship v. Price Waterhouse LLP*, No. 97 C 7694, 2001 WL 1568856, at *4 (N.D. Ill. Dec. 10, 2001) (*quoting Steinlauf v. Continental Ill. Corp. (In re Continental Ill. Sec. Litig.),* 962 F.2d 566, 572 (7th Cir.1992). A customary contingency fee would range from 33 1/3% to 40% of the amount recovered. *Id., (citing Kirchoff v. Flynn,* 786 F.2d 320, 324 (7th Cir.1986)); *In re Sell Oil Refinery,* 155 F.R.D. 552, 572 (E.D.La.1993) ("The customary contingency fee is between 33 1/3% and 40%.").

Awarding 35% from the Class Fund recognizes the vital role that contingency arrangements play in making legal counsel available to individuals who cannot afford hourly fees. Unlike traditional firms that receive hourly fees on a regular, recurring basis, employment counsel who take cases on contingency often spend years litigating cases (typically while incurring significant out-of-pocket expenses for experts, transcripts, travel, etc.), without receiving any payment for their work.

9

Sometimes fees and expenses are recovered; other times, despite hundreds of hours of work, nothing is recovered. This type of practice is viable only if attorneys, having received nothing for their work on some cases, receive more in other cases than they would if they charged hourly fees. Courts have long recognized this reality. *See, e.g., In re Union Carbide Corp. Consumer Products Business Securities Litigation*, 724 F. Supp. 160, 168 (S.D.N.Y. 1989) ("Contingent fee arrangements implicitly recognize the risk factor in litigation and that the winning cases must help pay for the losing ones if a lawyer who represents impecunious plaintiffs, or those plaintiffs not so fully committed as to put their own money where their mouth is, will remain solvent and available to serve the public interest.")

The inability of plaintiffs to afford hourly fees is especially common in the employment context, where many workers are low wage earners and cannot pay several hundred dollars per hour for legal representation. Contingency fee arrangements make it possible for firms such as The Garfinkel Group, LLC, to "serve the public interest" by taking on class actions that deter wage law violations by employers. *Skirchak v. Dynamics Research Corp.*, 432 F. Supp. 2d 175, 178–79 (D. Mass. 2006) (Lasker, J.). "Allowing private attorneys to prosecute such actions in the aggregate effectively ensures enforcement of the wage laws by motivating employers to comply or face potentially large-scale litigation, and by providing counsel with an incentive to pursue such claims." *Id.* at 179.

A 35% award also recognizes that firms may spend years developing the case law in a particular field and obtaining favorable decisions, all of which contributes to efficient and effective litigation on behalf of plaintiffs. *See In re Giant Interactive Group Inc. Sec. Litigation*, 2011 WL 5244707, *10 (S.D.N.Y. Nov. 2, 2011) ("[T]he Court finds [th]at public policy supports the award of a 33% fee in this case, the better to 'attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so.'"), *quoting In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d. 319, 359 (S.D.N.Y. 2005). Here, for example, Plaintiff's counsel collectively have extensive experience litigating class action BIPA cases and have contributed to the development of the law in

10

this area, winning multiple motions to dismiss (including in the instant matter), defeating multiple motions to stay, and winning what Plaintiff understands to be one of, if not the highest single-plaintiff BIPA arbitration award ($7,000 for seven violations) in 2023. *See Simpson vs. Our Lady of Angels Retirement Home and Smartlinx Solutions, LLC*, 2020-L-000826 (Circuit Court of Will County, Illinois, May 23, 2024); *Hayes v. CGB Enterprises, Inc., et al.*, 23-cv-3296 (C.D. Ill. June 20, 2024); *Hayes v. CGB Enterprises, Inc., et al.*, 23-cv- 3296 (C.D. Ill. July 25, 2024); *Conda v. Estyle Corp, LLC, f/k/a Ecoco, Inc., and Marit, LLC, f/k/a Ecoco, Inc.*, 2024L014241 (Plaintiff's Complaint Seeking Confirmation Of Arbitration Award Pursuant To The Uniform Arbitration Act, 710 ILCS 5/1 *Et Seq.*).

Here, Plaintiff's Counsel also defeated a motion to dismiss, conducted extensive discovery, and achieved a settlement above the range of typical outcomes in similar matters. Moreover, awarding a 35% award recognizes the time spent by Plaintiff's Counsel on this matter. Indeed, Plaintiff's Counsel, The Garfinkel Group, LLC, has expended nearly 200 hours (191.85 as of the filing of this Motion) and nearly $100,000 of attorney and paralegal time ($97,950) in litigating this matter, including amending the complaint post-removal, responding to Defendant's Motion to Dismiss, conducting over one year of settlement negotiations, and engaging in extensive written discovery and meet-and-confer communications.

Based on these considerations, Representative Plaintiff, Heather McClaine, proposes that a thirty-five percent (35%) award from the Settlement Fund for fees is fair and reasonable and ask that it be approved by the Court. This percentage is particularly reasonable given the excellent results achieved for the class, the risks undertaken by counsel in prosecuting this action on a contingent basis, and the substantial work performed. The fee request is further justified by the substantial monetary benefits obtained for the class - $2,444.74 per class member plus additional payments for subclass members - particularly in light of the significant risks and uncertainties of continued litigation.

**B. The Requested Costs are Reasonable and Should be Approved.**

11

Class Counsel also request reimbursement of $666.97 in out-of-pocket litigation costs. These expenses were reasonably incurred in prosecuting this action and consist of necessary costs such as filing fees, legal research expenses, and other litigation-related expenditures. Courts routinely approve reimbursement of such costs in class action settlements. See *Young*, 2020 WL 969616, at *6. The requested costs are modest in relation to the size of the settlement and the work performed, and no class member has objected to their reimbursement. Plaintiff also seeks approval of settlement administration costs from the Class Fund in the amount of $11,570.16, a standard and appropriate request in class action settlements. *Id.* Accordingly, these costs should be approved.

### C. The Court Should Approve Plaintiff's Requested Incentive Award.

The requested incentive award should be approved here. Indeed, "since without the named plaintiff there can be no class action, such compensation may be necessary to induce [her] to participate in the suit." *In re Cont'l Ill Sec. Litig.*, 962 F. 2d 566, 571 (7th Cir. 1992). Illinois state courts, like the federal courts, routinely approve incentive awards to named plaintiffs in class actions. See, e.g., *GMAC Mrtg. Corp. of Pa. v. Stapleton*, 236 Ill. App. 3d 486, 497) (1st Dist. 1992) (incentive awards are not atypical in class action cases, and serve to encourage the filing of class action suits) (citations omitted); *Coy v. CCN Managed Care, Inc.*, 2011 IL App. 5th 100068-U, 2011 WL 10500933 (5th Dist. 2011) (approving the incentive award agreed upon by the parties).

The settlement includes a $15,000 incentive award for Plaintiff, which is fair and reasonable given her efforts in assisting with the litigation. Plaintiff dedicated significant personal time gathering information and supporting the case. See Ex. 4, at ¶¶ 29. As the court noted in *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 601 (N.D. Ill. 2011), "[c]lass representative's willingness to publicly place their names on this suit and open themselves up to scrutiny and attention is certainly worth some remuneration." Given Plaintiff's contributions and the favorable results obtained, and with no objections raised, the Court should approve the $15,000 incentive award.

**D. The Settlement Class Members Were Properly Notified of the Fee Request and Incentive Award.**

The Notice sent to Settlement Class Members clearly disclosed that Class Counsel would seek attorneys' fees of up to 35% of the Settlement Fund ($532,929.89) plus reimbursement of litigation costs. The Notice explained how these amounts would affect the recovery of Settlement Class Members and provided instructions on how to object to the requested fees and costs. The absence of any objections to the fee request supports its reasonableness and approval by this Court.

**V.   Plaintiff Requests that this Court Advance the Final Approval Hearing and Permit Remote Participation.**

Finally, Plaintiff respectfully requests that this Court advance the final approval hearing from April 15, to March 26, 2025, at 10:00 a.m., and conduct the hearing via Zoom.

Federal courts have inherent authority to manage their dockets efficiently, including in class actions. The Supreme Court has long recognized that courts are vested with the inherent power to "achieve the orderly and expeditious disposition of cases," a power that is "governed not by rule or statute, but by the control necessarily vested in courts to manage their own affairs." *Chambers v. Nasco, Inc.*, 501 U.S. 32, 43 (1991) (citing *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962)); see also *Anderson v. Dunn*, 6 Wheat. 204, 227 (1821); *Ex parte Robinson*, 19 Wall. 505, 510 (1874). FRCP 23(d) further grants courts broad discretion in managing class actions, including determining the course of proceedings and ordering measures to prevent undue complication or inefficiency. See Fed. R. Civ. P. 23(d)(1)(A). Advancing the hearing and holding it remotely is fully within this Court's authority and aligns with these principles.

This request is also consistent with this Court's prior order, which expressly states that the Final Approval Hearing may be postponed, adjourned, transferred, or continued without further notice to class members. See ECF No. 57, ¶¶ 4-5. No class members have objected to certification or the settlement, and this is not a contested motion. All counsel are based in Chicago, Illinois and would

13

otherwise have to incur unnecessary travel expenses to attend an uncontested hearing in person. Respectfully, the parties recognize the importance of final approval and do not, in any way, seek to make light of the hearing, but simply seek to avoid unnecessary expenditures that could otherwise be preserved for the class.

Local Rule 7.1(c) and Judge Dugan's standing order on motion practice also support this request. Local Rule 7.1(c) permits the Court to schedule hearings by "telephone conference call or other remote means," and Judge Dugan has discretion to set hearings in person "unless otherwise indicated by the Court." Holding the hearing via Zoom is fully in line with these rules and will serve the interests of efficiency and resource conservation. Accordingly, Plaintiff respectfully requests that this Court advance the Final Approval Hearing to March 26, 2025, at 10:00 a.m. (or another time convenient to the Court) and conduct the hearing via Zoom.

## VI. Conclusion.

For the foregoing reasons, Plaintiff respectfully requests that this Court enter an order, which:

(1) grant final approval of the class action settlement as fair, reasonable, and adequate;

(2) certify the Settlement Class for settlement purposes only;

(3) approve the requested attorneys' fees of $532,929.89 and costs of $666.97;

(4) approve payment to the settlement administrator in the amount of $11,570.16;

(5) approve the service award of $15,000 to the Class Representative;

(6) approve the settlement administration costs of up to $15,000;

(7) enter the proposed Final Approval Order submitted herewith. A proposed Final Approval Order is attached as Ex. 5; and

(8) dismiss case with prejudice.

|  | Respectfully submitted |
|---|---|
| Dated: March 18, 2025 | By: /s/ *Max P. Barack* |
|  | One of Plaintiff's Attorneys |

Max P. Barack
The Garfinkel Group, LLC
701 N. Milwaukee Avenue
The CIVITAS
Chicago, IL 60642
P: 312-736-7991
max@garfinkelgroup.com

## CERTIFICATE OF SERVICE

      I, Max Barack, hereby certify that on March 18, 2025, I filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

<u>/s/ Max Barack</u>